670 So.2d 278 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Demetria W. DILLON, Defendant-Appellant.
No. 95-00884.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
*279 Robert Richard Bryant Jr., Paul Peter Reggie, Lake Charles, for State of Louisiana.
Robert J. Pastor, New Orleans, for Demetria W. Dillon.
Before COOKS, PETERS and GREMILLION, JJ.
GREMILLION, Judge.
After an adverse ruling on her motions to quash indictment and suppress evidence, defendant, Demetria W. Dillon, pleaded guilty to possession of marijuana with intent to distribute and possession of cocaine over 400 grams. In pleading guilty, Dillon reserved her rights to seek appellate review of the rulings on her motions. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced her to five years on the first charge and fifteen years and a fine of $250,000 on the second, both sentences to run concurrently. We affirm and remand with instructions.

FACTS
On February 14, 1994, Louisiana State Police Troopers LaFleur and Savoy spotted Dillon's vehicle traveling in Calcasieu Parish. They noted the vehicle's windows were tinted in violation of La.R.S. 32:361.1. After stopping the vehicle, the officers spoke with Dillon, who was driving, and the passenger, Rogers Batiste, Jr. Dillon and Batiste gave conflicting stories concerning where they had been and their relationship to each other. The troopers further noted that both were exceptionally nervous. Upon checking the criminal records of the two, the troopers discovered Batiste had numerous narcotics violations. Trooper LaFleur issued Dillon a ticket for violating the tint law and asked her to sign a consent to search form. Upon her refusal, a narcotics dog, already on the scene, indicated the presence of narcotics in the vehicle. The troopers searched the car and discovered a considerable amount of marijuana, cocaine, and over $53,000 in cash.

*280 MOTION TO QUASH
In her first assignment of error, Dillon contends the trial court erred in denying her motion to quash which alleged an illegal stop and arrest. She claims La.R.S. 32:361.1 is unconstitutional, and thus, the stop, search, and eventual arrest based on that statute are illegal. La.R.S. 32:361.1(B) states:
Except as provided by R.S. 32:361.1(C), no person may operate a motor vehicle with any object or material placed on or affixed to the front windshield or to front side windows of the vehicle so as to obstruct or reduce the driver's clear view through the front windshield or front side windows, nor place on or affix to the front windshield or the front side windows of a motor vehicle, any transparent material if the material alters the color or reduces the light transmission of the windshield or front side windows.
In State v. Gamberella, 633 So.2d 595, 601 (La.App. 1 Cir.1993), writ denied, 94-0200 (La. 6/24/94); 640 So.2d 1341, the court explained:
Statutes are presumed to be valid; whenever possible, the constitutionality of a statute should be upheld. State v. Brenner, 486 So.2d 101 (La.1986). Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. State v. Griffin, 495 So.2d 1306 (La.1986). Attacks on the constitutionality of a statute may be made by two methods. The statute itself can be challenged, or the statute's application to a particular defendant can be the basis of the attack.
In the case sub judice, Dillon challenges the statute itself as well as its application to her. She claims this statute is constitutionally illegal for a number of reasons. First, she claims Louisiana does not have a legitimate state interest in regulating the degree of window tinting on cars. She also argues that the law relies upon the visual acuity of the enforcer, and its accuracy is subject to environmental variables, making it a constitutionally unacceptable method of enforcement. She avers the human eye is incapable of determining the degree of tint of any vehicle. Dillon further argues the regulatory scheme of the tint law among the states is dissimilar and, thereby, violates the commerce clause of the United States Constitution by creating an undue burden upon the commerce of the United States. Dillon states that this is apparent under the particulars of this case because the vehicle was purchased in Texas, by a Louisiana resident, and it was in compliance with the Texas tint law at the time of the purchase. Finally, she avers the law is unconstitutional because it violates her right to privacy guaranteed by the United States and Louisiana Constitutions.
Dillon first objected to La.R.S. 32:361.1 by filing a motion to quash the indictment alleging the law to be unconstitutional. On September 23, 1994, prior to her guilty plea, a hearing was held on the issue. The trial judge found the statute constitutionally valid and denied the motion to quash. In his opinion he addressed all the issues Dillon raises in her brief.
Concerning the alleged commerce clause violation, the trial judge cited Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), in which the Court explained the test for commerce clause violations:
Where the statute regulates even handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. (Cite omitted.) If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.
The pertinent portion of La.R.S. 32:361.1 requires Louisiana residents to ensure the windows of their motor vehicles do not have any transparent material altering the color or reducing the light transmission of the windshield or front side windows. Dillon offers no evidence of the burdens such a law places on interstate commerce. The trial court analogized the law to the regulations requiring residents to maintain their brakes *281 and lights; the state interest involved is public safety. The trial judge explained:
Even if La.R.S. 32:361.1 does burden interstate commerce, the statute is narrowly tailored to achieve a compelling state interest. Often times, police officers are required to approach vehicles stopped for routine traffic citations. Clearly, an obscured view of a vehicle's occupants poses a grave threat to the safety of a police officer in the performance of his/her duties. Visibility of occupants ensures the safety of police officers as well as citizens. In an age of car-jacking, drive-by-shooting, and random violence, the burden placed on residents by La.R.S. 32:361.1 is insignificant.
Furthermore, Dillon contends the law is unconstitutional because each state's law is different, and she, having bought the car in Texas, was in compliance with the law in Texas concerning window tinting. As the trial judge noted, Dillon is a Louisiana resident and her registration and inspection stickers are issued by this state. Thus, she is subject to the motor vehicle regulations of Louisiana. "Where traffic control and the use of highways are involved and where there is no conflicting federal regulation, great leeway is allowed local authorities, even though the local regulation materially interferes with interstate commerce." Railway Express Agency, Inc., et al. v. People of State of New York, 336 U.S. 106, 111, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949).
Window tinting, as with many other vehicle accessories, is basically cosmetic and can be widely obtained. The buyer should be aware that certain accessories may violate the law in certain areas and not in others. For example, see People v. Hutchinson, 211 Cal. App.3d Supp. 9, 260 Cal.Rptr. 178 (1989), where a California window tinting statute similar to Louisiana's was found valid when applied to an Arizona resident, even though the Arizona resident's window tint was legal in Arizona.
Concerning the issue of the law's reliance upon the human eye for its enforcement, the trial judge noted:
The human body is endowed with five senses and numerous mental faculties. As humans, police officers are often forced to depend upon these senses in addition to their intuition, skill and experience. To strike a statute because police officers are prone to rely upon their senses during its enforcement would be ludicrous.
This court agrees with the reasoning of the trial judge on this issue. Many state laws require a police officer to rely on his senses in order to enforce the law. In virtually every case in which a police officer testifies, that officer is asked to give an impression garnered from his senses. Likewise, there is always the possibility that environmental conditions can interfere with the enforcement of the laws, but that is not a valid reason to find the law unconstitutional. Furthermore, Trooper LaFleur testified that even though he thought the window tinting was too dark, the degree of tinting was determined with a light transmission meter before a violation was found and the ticket issued. Dillon's argument in this regard lacks reason and common sense and is without merit.
Dillon also argues that the law violates her right to privacy. In the Interest of J.M., 590 So.2d 565 (La.1991), the court noted that the right to be free from unreasonable searches and seizures is not absolute and may be reasonably regulated when the state has a sufficiently weighty interest. It is our opinion that the state has a compelling interest in protecting officers and citizens by insuring the visibility of a car's occupants. In Pennsylvania v. Mimms, 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977), the Supreme Court explained:
And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer ShootingsA Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963)." Adams v. Williams, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).
The interest in public safety should be weighed against the intrusion into the driver's *282 personal liberty occasioned by requiring the driver to maintain windows with significant visibility. This intrusion is minimal. As in Mimms, 434 U.S. at 111, 98 S.Ct. at 333, "[t]he driver is being asked to expose to view very little more of his person than is already exposed." This regulation cannot be construed as a "serious intrusion upon the sanctity of the person." Terry v. State of Ohio, 392 U.S. 1, 17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." Mimms, 434 U.S. at 111, 98 S.Ct. at 333. Furthermore, as the trial judge noted, an individual's expectation of privacy is diminished in an automobile. California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The statute does not violate Dillon's right to privacy, and she has failed in her constitutional challenge. This assignment of error lacks merit.

MOTION TO SUPPRESS
In her second assignment of error, Dillon contends the trial court erred in denying her motion to suppress. She contends both the stop and the search violated her right to privacy as protected by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Section 5 of the Louisiana Constitution.
In State v. Fisher, 94-603 p. 5 (La. App. 3 Cir. 11/2/94); 649 So.2d 604, 607, writ denied, 94-2930 (La. 4/7/95); 652 So.2d 1344, the court held:
An individual cannot be stopped in his automobile by a police officer, without a warrant, unless the officer had a reasonable suspicion that the individual has committed, or is about to commit, a criminal offense, including the violation of a traffic regulation. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Matthews, 366 So.2d 1348 (La. 1978); State v. Brew, 593 So.2d 447 (La. App. 2d Cir.1992), citing State v. Cohen, 549 So.2d 884 (La.App.2d Cir.1989), writ denied, 559 So.2d 135 (La.1990).
It is apparent from the testimony of Trooper LaFleur that he and Trooper Savoy had reasonable cause to stop Dillon's vehicle, because it was in violation of the tint law. Once the officers stopped the vehicle, they received conflicting stories on where Dillon and her passenger had been and their relationship to each other. The officers further noticed that both were very nervous. Upon checking their criminal records, the troopers discovered that while Dillon had no record, Batiste had a history of narcotics violations. The troopers requested Dillon's consent to a search, but she refused. A narcotics dog, certified and trained to detect drugs, was already on the scene and indicated the presence of narcotics in the vehicle. The troopers then made a warrantless search of the vehicle and discovered the drugs and the money.
A warrantless search is reasonable under the automobile exception to the Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution if there is probable cause and exigent circumstances exist which make obtaining a search warrant impractical. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In State v. Tatum, 466 So.2d 29, 31 (La.1985), the court, citing the United States Supreme Court in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), held "that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it, may conduct a warrantless search of the vehicle as thoroughly as a magistrate could authorize." "Probable cause exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Wells, 593 So.2d 465, 467 (La.App. 2 Cir.), writ denied, 598 So.2d 357 (1992), citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In State v. Albritton, 610 So.2d 209 (La.App. 3 Cir.1992), the court noted that a positive canine alert for the presence of narcotics is strong evidence that probable cause exists, and in State v. Thompson, 543 So.2d 1077, 1082 (La.App. 2 Cir.), writ denied, 551 So.2d 1335 (La.1989), citing Ross, 456 U.S. 798, 102 S.Ct. 2157 and Tatum, 466 So.2d 29, the court stated that *283 "probable cause existed for the officers to search Thompson's truck ... without a warrant" when two drug detection dogs had alerted on the truck's tailgate.
In State v. Meyers, 520 So.2d 842 (La.App. 3 Cir.1987), this court held that a state trooper had properly stopped an automobile for speeding, and his observation of the driver's and passenger's nervousness gave the officer the reasonable cause necessary to initiate an investigatory stop. A narcotics dog then arrived and indicated drugs were present in the vehicle. The court found this established probable cause to search the car. In the case sub judice, the trial judge's determination of probable cause was proper based on the totality of the circumstances.
The second prong of this exception is that exigent circumstances must exist. In State v. Chaney, 423 So.2d 1092, 1097 (La.1982), the court, quoting from State v. Guzman, 362 So.2d 744 (La.1978), cert. denied 443 U.S. 912, 99 S.Ct. 3103, 61 L.Ed.2d 876 (1979) defined "exigent circumstances" as:
[T]he impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested or by someone else. An immediate warrantless search is, therefore, constitutionally permissible when `the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.'
This search fell within the automobile exception to the search warrant requirement. Probable cause existed because of the totality of the evidencethe conflicting stories, the nervousness of both the driver and the passenger, the passenger's record of narcotics violations, and the indication made on the car by the dog. Exigent circumstances arose because the automobile was mobile and could have been driven away and the evidence forever lost. The search was constitutionally permissible. The assignment of error is without merit.

CONCLUSION
The trial judge properly denied both Dillon's motion to quash and her motion to suppress. However, a careful review of the record reveals that the trial court did not give her credit for time spent in actual custody prior to the imposition of sentence, as required by La.Code Crim.P. art. 880. The sentence is amended to reflect that Dillon is given credit for time served prior to the execution of sentence. See La.Code Crim.P. art. 882 A. Resentencing is not required; however, this case is remanded and the district court is ordered to amend the commitment and minute entry of the sentence to reflect the credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1 Cir.1992), writ denied, 612 So.2d 79 (La.1993).
For the foregoing reasons, the judgment of the trial court is amended to give Dillon credit for time served and is affirmed as amended; the case is remanded to the trial court for compliance with the instructions. Costs of this appeal are assessed against Dillon.
AMENDED AND AFFIRMED; REMANDED WITH INSTRUCTIONS.